Gerald Grunsfeld, Esq.
Lazar Grunsfeld Elnadav LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
Gerry@LGELaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD DAYAN,<br><br>    Plaintiff,<br><br>-*against*-<br><br>ELIE LEVY, MICHAEL KASSIN, SPORTLIFE BRANDS, LLC, AND BLACKVIEW CAPITAL, LLC<br><br>    Defendants, | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, EDWARD DAYAN, by his attorneys, Lazar Grunsfeld Elnadav LLP, for his complaint, alleges, upon information and belief, as follows:

**JURISIDICTION AND VENUE**

1. This action arises under the Stored Communications Act 18 USC § 2701 et seq and Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction of the breach of contract claim.

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) in that the Defendants reside in this district.

**PARTIES**

1. Plaintiff EDWARD DAYAN is a resident of Brooklyn, New York, and owns a 32% ownership interest in SPORTLIFE BRANDS, LLC ("SBL").

2. SBL is a Delaware Limited Liability Company, with headquarters in Manhattan, New York.

3. Defendant BLACKVIEW CAPITAL, LLC ("BLACKVIEW") is a Delaware Limited Liability Company, with headquarters in Manhattan, New York.

4. BLACKVIEW owns a 54% ownership stake in SBL.

5. Upon information and belief, Defendant Elie Levy and his family own the majority stake in BLACKVIEW.

6. Defendant Elie Levy resides in Brooklyn, New York.

7. Defendant Michael Kassin is a resident of Brooklyn, New York, and owns a 14% ownership interest in SBL.

8. Collectively, Plaintiff and Defendants are referred to herein as the Parties.

**FACTUAL BACKGROUND**

9. On or around October 29, 2018, the Parties signed a binding Term Sheet whereby Plaintiff made a capital contribution of $600,000 to SBL, in exchange for a 32% ownership interest in the company.

10. $300,000 of Plaintiff's $600,000 contribution was loaned to Plaintiff from BLACKVIEW, with the repayment of the loan due two years from execution of the Term Sheet.

11. Exhibit C to the Term Sheet consisted of an Employment Agreement which set forth Plaintiff's terms of employment with SBL.

12. Pursuant to the Employment Agreement, Plaintiff's base salary was $275,000 per annum, with options for a $100,000 bonus for each year SBL's Ebidta exceeded $2.5 million.

13. Pursuant to the Employment Agreement, Plaintiff could only be fired/terminated from SBL for cause.

14. The Employment Agreement set forth three scenarios which would constitute a "for cause" basis for termination:

    a. Conviction or guilty plea to a felony.

    b. Conviction or guilty plea to fraud or embezzlement of company property/assets.

    c. Willful failure to perform services of employment for thirty consecutive days followed by a failure to cure for at least ten business days following receipt of notice of breach.

15. The Term Sheet provided that the Parties were prohibited from competing with SBL in any area that SBL was currently involved in as of the date of the Term Sheet, and in the event any of the Parties was offered the opportunity to enter a business in certain specified closely related areas of commerce, the party was required to bring the opportunity to the Company first.

16. On or around March 6, 2020, the Parties amended certain provisions of the original Term Sheet, including, that the due date for Plaintiff to repay the $300,000 loan was extended to the end of 2022.

17. The Parties subsequently orally agreed that there would be no fixed time by which Plaintiff had to repay the loan but rather, 50% of any distributions payable to Plaintiff would instead be given to BLACKVIEW until the loan had been repaid.

18. By 2023, Plaintiff's salary was $280,000, plus bonus plus distributions.

19. During the course of Plaintiff's employment with SBL, Plaintiff worked on average 60-70 hours week on behalf of SBL.

20. Plaintiff also facilitated sales of other products for other companies so as to earn commissions from those sales, however, this activity did not violate the non-compete clause of the

Term Sheet because these sales were for products that SBL did not sell.

21. Furthermore, these sales never distracted Plaintiff from his primary responsibility towards SBL, as he always worked 60-70 hours per week on SBL work.

22. Plaintiff's used his personal G-mail account to send and receive e-mails about his non-SBL business ventures.

23. Furthermore, Defendant Levy also spent a considerable amount of time on BLACKVIEW and Defendant Kassin also spent time on his own businesses.

24. On January 5, 2023, Plaintiff received a letter from a law firm hired by SBL advising him that he had been terminated from SBL for cause with immediate effect (hereafter referred to as the Termination Notice).

25. The Termination Notice set forth that SBL had "discovered over 30,000 emails" purportedly proving that Plaintiff had improperly been working full time on non-SBL businesses.

26. Given that the entirety of Plaintiff's G-mail folders number approximately 30,000 e-mails, this means that Defendants downloaded the entirety of Plaintiff's G-mail inbox/outbox folders, including tens of thousands of e-mails which predate his employment with SBL.

27. Plaintiff adamantly denies the allegations as set forth in the Termination Notice, and avers that his involvement in "side-deals" did not violate the Term-Sheet's non-compete clause, and his involvement in private business deals was no different in quantity or quality from Defendants' involvement in non-SBL businesses.

28. Regardless, even if the allegations set forth in the Termination Notice were true (which they are not), the allegations do not fit any of the three "for cause" criteria set forth in the Term Sheet.

29. Furthermore, even if the allegations did fit one of the "for cause" criteria, Plaintiff never received a notice of breach prior to the termination.

30. Furthermore, upon information and belief, all of Plaintiff's communications concerning his non-SBL business deals is contained in his personal G-mail account.

31. Plaintiff was never given any prior notice that SBL would monitor his computer or his personal e-mails.

32. SBL never notified Plaintiff that he did not have the right to use the SBL computer for personal business.

33. Plaintiff was the only person who used his computer and the only person who shared Plaintiff's office was his assistant. As such, Plaintiff had every expectation that the information contained on his office computer, and certainly the information contained in his personal G-mail e-mails would be treated as his own private information which SBL had no right to review without prior permission.

34. Given that SBL claims to have reviewed 30,000 of Plaintiff's e-mails which contain information about Plaintiff's non-SBL business ventures, the only way SBL could have reviewed such information is by illegally downloading and reviewing the entirety of Plaintiff's G-mail inbox/outbox, as his SBL e-mails do not contain information about his non-SBL business ventures.

35. The vast majority of the 30,000 G-mail e-mails that Defendants illegally accessed, downloaded and reviewed are e-mails which Plaintiff sent and received before he was employed with SBL, including hundreds of personal e-mails.

36. Upon information and belief, including among the 30,000 e-mails Defendants illegally downloaded and reviewed are hundreds or thousands of e-mails which Plaintiff did not use his office computer to send, and many of which were also sent and/or read by Plaintiff outside of office hours.

37. Upon information and belief, including among the 30,000 e-mails Defendants illegally downloaded and reviewed, are hundreds or thousands of non-work related e-mails, (such

5

as personal/medical/attorney-client) many of which Plaintiff did not use his office computer to send, many of which were sent/read, outside of office hours.

38. Upon information and belief, the only way that SBL could have obtained these e-mail is by physical or electronically accessing Plaintiff's computer and downloading Plaintiff's entire G-mail account, which e-mails are stored on G-mail's servers.

39. Upon information and belief, the only way that SBL could have/would have accessed Plaintiff's computer and downloaded 30,000 e-mails from Plaintiff's G-mail account, is if it was directed to do so by Defendants Kassin, Levy and BLACKVIEW.

40. Having improperly terminated Plaintiff without cause, Defendants damaged Plaintiff's business relationships by sending out e-mails to all of Plaintiff's business contacts advising them that Plaintiff was no longer affiliated with SBL.

41. Defendants also sent Plaintiff a notice demanding immediate repayment of the $300,000 loan.

**FIRST CAUSE OF ACTION**
(Violation of Stored Communications Act 18 USC § 2701 et seq)

42. Plaintiff repeats and realleges the prior allegations as if fully set forth herein.

43. Upon information and belief, the only way that SBL could have/would have accessed Plaintiff's computer and downloaded 30,000 e-mails from Plaintiff's G-mail account, is if it was directed to do so by Defendants Kassin, Levy and BLACKVIEW.

44. Google's G-mail e-mail service constitutes an electronic communication service as such term is defined by 18 USC §2510(15) and incorporated into the Stored Communications Act pursuant to 18 USC § 2711(1).

45. Plaintiff is a subscriber of Google's G-mail e-mail service pursuant to 18 USC § 2707(a).

46. Plaintiff's G-mail e-mails were in electronic storage as such term is defined by 18 USC §2510(17) and incorporated into the Stored Communications Act pursuant to 18 USC § 2711(1).

47. Defendants violated the Stored Communications Act by intentionally accessing, downloading, and reviewing 30,000 of Plaintiff's G-mail e-mails without Plaintiff's authorization, and knowing that Plaintiff would have refused such authorization if it had been requested.

48. The vast majority of such e-mails were e-mails that Plaintiff sent and received before Plaintiff was employed by SBL.

49. Of the e-mails which post-date Plaintiff's employment with SBL, the vast majority of these e-mails were either sent or received outside of office hours, and/or without any involvement of SBL equipment.

50. Plaintiff has been damaged by Defendants' violation, as they have used the information they reviewed in his G-mail e-mails as a pretext to terminate his employment with SBL.

51. In addition, Plaintiff has been damaged because Defendants used the information they reviewed in Plaintiff's G-mail e-mails as a pretext to demand immediate repayment of the $300,000 loan.

52. In addition, Plaintiff has been damaged because Defendants used the information they reviewed in Plaintiff's G-mail e-mails as a pretext to send a notice to all of Plaintiff's business contacts advising them that Plaintiff is no longer affiliated with SBL.

53. Plaintiff is entitled to receive his actual damages pursuant to 18 USC § 2707(c).

54. Pursuant to 18 USC § 2707(c), Plaintiff is entitled to receive statutory damages of at least $1,000, for each of Defendants willful violations of the Stored Communications Act.

55. Pursuant to 18 USC § 2707(c), Plaintiff is entitled to receive punitive damages as a

result of Defendants willful violations of the Stored Communications Act.

56. Pursuant to 18 USC § 2707(c), Plaintiff is entitled to receive his costs and attorney's fees as a result of Defendants' willful violations of the Stored Communications Act.

## SECOND CAUSE OF ACTION

**(**Computer Fraud and Abuse Act 18 U.S.C. § 1030 et seq).

57. Plaintiff repeats and realleges the prior allegations as if fully set forth herein.

58. Upon information and belief, the only way that SBL could have accessed Plaintiff's computer and downloaded 30,000 e-mails from Plaintiff's G-mail account, is if it was directed to do so by Defendants Kassin, Levy and BLACKVIEW.

59. Google's G-mail e-mail service constitutes an electronic communication service as such term is defined by 18 USC §2510(15) and incorporated into the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030 et seq.

60. Plaintiff is a subscriber of Google's G-mail e-mail service.

61. Plaintiff's G-mail e-mails were in electronic storage as such term is defined by 18 USC §2510(17) and incorporated into the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030 et seq.

62. Defendants violated the Computer Fraud and Abuse Act by intentionally accessing, downloading, and reviewing 30,000 of Plaintiff's G-mail e-mails without Plaintiff's authorization, and knowing that Plaintiff would have refused such authorization if it had been requested.

63. The vast majority of such e-mails were e-mails that Plaintiff sent and received before Plaintiff was employed by SBL.

64. Of the e-mails which post-date Plaintiff's employment with SBL, the vast majority of these e-mails were either sent or received outside of office hours, and/or without any involvement of SBL equipment.

65. Plaintiff has been damaged by Defendants' violation in an amount exceeding $5,000, as they have used the information they reviewed in his G-mail e-mails as a pretext to terminate his employment with SBL.

66. In addition, Plaintiff has been damaged in an amount exceeding $5,000, because Defendants used the information they reviewed in Plaintiff's G-mail e-mails as a pretext to demand immediate repayment of the $300,000 loan.

67. In addition, Plaintiff has been damaged in an amount exceeding $5,000, because Defendants used the information they reviewed in Plaintiff's G-mail e-mails as a pretext to send a notice to all of Plaintiff's business contacts advising them that Plaintiff is no longer affiliated with SBL.

68. As a result of Defendants' violation of the Computer Fraud and Abuse Act, Plaintiff is entitled to receive his actual damages (in an amount to be proven at trial), statutory damages, punitive damages, costs and attorney's fees.

## THIRD CAUSE OF ACTION

### (BREACH OF CONTRACT).

69. Plaintiff repeats and realleges the prior allegations as if fully set forth herein.

70. On or around October 29, 2018, the Parties signed a binding Term Sheet whereby Plaintiff made a capital contribution of $600,000 to SBL, in exchange for a 32% ownership interest in the company.

71. $300,000 of Plaintiff's $600,000 contribution was loaned to Plaintiff from BLACKVIEW, with the repayment of the loan due two years from execution of the Term Sheet.

72. Exhibit C to the Term Sheet consisted of an Employment Agreement which set forth Plaintiff's terms of employment with SBL.

73. Pursuant to the Employment Agreement, Plaintiff could only be fired/terminated

from SBL for cause.

74. By 2023, Plaintiff's salary was $280,000, plus bonus plus distributions.

75. On January 5, 2023, Plaintiff received a letter from a law firm hired by SBL advising him that he had been terminated from SBL for cause with immediate effect (hereafter referred to as the Termination Notice).

76. The letter set forth that SBL had "discovered over 30,000 emails" purportedly proving that Plaintiff had improperly been working full time on non-SBL businesses.

77. Plaintiff adamantly denies the allegations as set forth in the Termination Notice, and avers that his involvement in "side-deals" did not violate the Term-Sheet's non-compete clause, and his involvement in private business deals was no different in quantity or quality from Defendants' involvement in non-SBL businesses.

78. Regardless, even if the allegations set forth in the Termination Notice were true (which they are not), the allegations do not fit any of the three "for cause" criteria set forth in the Term Sheet.

79. Furthermore, even if the allegations did fit one of the "for cause" criteria, Plaintiff never received a notice of breach prior to the termination.

80. As such, Defendants did not have the right to terminate Plaintiff, and the purported termination is in breach of the Term Sheet.

81. SBL would not have sent the aforesaid Termination Notice without being directed to do so Defendants Kassin, Levy and BLACKVIEW.

82. As a result of the wrongful termination in breach of the Term Sheet, Plaintiff has sustained damages in an amount to be proven at trial, but such amount includes but is not limited to any salary/bonus/distribution/health insurance/benefits Defendants withhold from Plaintiff.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgement as follows:

1. Total damages of $10,000,000, including actual damages in an amount to be proven at trial, statutory damages of at least $1,000 for each wrongful access and for each wrongful review of Plaintiff's e-mails; and punitive damages; and

2. Costs, expenses and attorneys' fees.

Dated: Brooklyn, New York
       January 7, 2023

                                        LAZAR GRUNSFELD ELNADAV LLP

                                   By: *Gerald Grunsfeld*
                                        Gerald Grunsfeld, Esq.
                                        1795 Coney Island Avenue
                                        Brooklyn, NY 11230
                                        Gerry@lgelaw.com
                                        (718) 947-7476
                                        Attorney for Plaintiff